376 So.2d 97 (1979)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and
v.
William H. SLAYDON, Gary Boué and State of Louisiana.
Gary Raymond BOUÉ
v.
LOUISIANA DEPARTMENT OF HIGHWAYS and William H. Slaydon.
James D. SLAYTON, etc., et al.
v.
LOUISIANA DEPARTMENT OF HIGHWAYS and William H. Slaydon.
Nos. 64345, 64354.
Supreme Court of Louisiana.
October 8, 1979.
Rehearing Denied November 1, 1979.
*98 Peter C. Rizzo, Davis, Saunders, Miller & Rizzo, Metairie, for plaintiffs-applicants in 64345 and for plaintiffs-respondents in 64354.
Ron S. Macaluso, Trial Atty., State of La., Dept. of Highways, Hammond, for defendant-respondent in 64345 and 64354.
Dale E. Branch, Seal, Lee, Branch & Brown, Bogalusa, for plaintiff-applicant, State Farm Mutual Automobile Ins. Co. in 64354 and plaintiff-respondent in 64345.
BLANCHE, Justice.
These consolidated actions arise out of a collision on Interstate Highway 59 between a wandering cow and a van driven by Gary Boué. Both Boué and Slayton, one of his passengers, were injured and the cow was killed. The trial court found that the Department of Highways was negligent in failing to maintain the fences properly and in allowing livestock to roam the highway without warning the public. The trial court awarded damages to Boué, Slayton and State Farm Insurance Company based upon its subrogation claim for medical benefits paid to Slayton. The action against William Slaydon was dismissed since the evidence did not show that he was the owner of the cow. The court of appeal reversed and held that the Department was not negligent.
We granted a writ of certiorari to determine whether the Department of Highways was negligent. We reverse and hold that where the Department has notice of persistent roaming livestock on an interstate highway and fails to warn the motoring public it has violated its duty to maintain the highway in a reasonably safe condition.
The collision occurred on a five to six mile section of Interstate 59 which passes through Honey Island Swamp. The swamp is generally uninhabited and cattle and other livestock are allowed to roam freely on either side of the highway. The integrity of the right of way is maintained by a barbed wire and hog wire fence approximately five feet high. Several witnesses testified as to the condition of the fence. Due to hunters in the area who cut the wires to get into the neighboring swamp, flood waters and occasional unreported accidents, the fence frequently is torn down in sections. As a result of these breaks and the existence of certain sections of the fence near the bridges which are only two feet high, cattle and other livestock were often discovered on the interstate highway. Officer Canulette of the state police testified that he received an average of six or seven complaints per week concerning animals on this highway. Officer Singletary, another state policeman, testified that he had personally seen cattle on the road a couple of times a month. Residents of the area and some of the Department's personnel testified that they were aware of a serious problem along this particular stretch of highway due to the frequency of cattle on or near the highway. Both officers testified that they recognized this particular cow, who Officer Canulette said was an "habitual offender".
Although the investigating officer testified that due to the darkness that night he could not find a break in the immediate vicinity of the accident, he and other officers testified that quite frequently there were breaks in the fence. The officers testified that if they spotted a break in the fence they would report it to their superiors who in turn would call in a report to the Highway Department. Highway Department personnel testified that their maintenance crews would also report the damage and sometimes make temporary repairs until the work crew could make permanent ones.
It is an established principle of law that the Department of Highways is not the insurer of the safety of all motorists on its roads nor is it responsible for every accident that may occur. Barnes v. Liberty Mutual Ins. Co., 350 So.2d 288 (La.App. 3rd Cir. 1977). Yet, the Department is required to maintain roads and highways in a reasonably safe condition and remedy conditions which make the roadway unsafe. Von Cannon *99 v. State, Dept. of Hwys., 306 So.2d 437 (La.App. 3rd Cir. 1975).
Before the Department may be held liable for an accident caused by a hazardous or dangerous condition, it must be shown that the Department had actual or constructive notice of the condition and a sufficient opportunity to remedy the situation or at least to warn motorists of its presence, and failed to do so. Coleman v. Houp, 319 So.2d 831 (La.App. 3rd Cir. 1975). We find that the record establishes that the Department knew or should have known of the dangerous condition of the highway by the presence of cattle roaming thereon and did nothing to warn motorists of the dangerous condition. As pointed out by the Court of Appeal, the Department could not prevent vehicles from crashing into the fences, trees from falling nor flood waters from rising. Neither could they, without law enforcement agents, keep the hunters from cutting the fences. The Highway Department is only required to make reasonable maintenance efforts and is not required to inspect the roadway continuously.
Although the Highway Department did employ reasonable maintenance efforts, they knew that elements beyond their control made these efforts insufficient and that despite such efforts, cattle and other livestock roamed this particular section of interstate highway. Thus we do not fault them for their failure to maintain the highway at this point. Their failure is with respect to their duty to warn.
The rule in Louisiana is that a motorist has a right to presume that the public highways are safe for ordinary use. He is not required to anticipate extraordinary danger, impediments or obstructions to which his attention has not been drawn and of which he has not been warned. This presumption should arise with even greater force on interstate highways. USF & G v. State, Dept. of Hwys., 339 So.2d 780 (La. 1978). Thus, it is the duty of the Highway Department to post signs warning motorists of conditions which pose a danger to the motoring public. Aymond v. State, Dept. of Hwys., 333 So.2d 383 (La.App. 3rd Cir. 1976); Hall v. State, Dept. of Hwys., 213 So.2d 169 (La.App. 3rd Cir. 1968); LeBlanc v. Estate of Blanchard, 266 So.2d 918 (La. App. 4th Cir. 1972).
It is apparent to us that cattle and other livestock frequently roamed this limited access highway and this constitutes an obstacle which creates an unreasonable danger for the unwary motorist. The safeguards required of the Department should be commensurate with the danger. Von Cannon v. State, Dept. of Hwys., supra. As the potential danger here was great, certainly some type of warning device was necessary to warn the public of the presence of cattle roaming the highway in this area. The failure of the Department to warn of a condition of which they were so well aware amounts to a breach of its duty to maintain the highway in a safe condition.
For the reasons assigned the judgment of the Court of Appeal is set aside and the judgment of the trial court is reinstated.