SHORTESS, Judge.
This personal injury suit arose from an accident in which a van apparently struck a cow on an “open-range” highway. Cora Roberts (plaintiff), a passenger in a vehicle owned and driven by George Godso, was injured. She brought suit against Godso’s insurer, Colonial Penn Insurance Company [1] and the Louisiana Department of Transportation and Development (DOTD). Her claim against DOTD was based on its failure to post “OPEN RANGE” or “STOCK AT LARGE” signs on La. 441 which traversed an area of open range in *428 Livingston Parish. The trial court found for plaintiff and DOTD appeals.
On August 1, 1981, plaintiff and Godso visited plaintiff’s sister in rural Livingston Parish. They were returning to their homes in Denham Springs about 9:45 p.m., traveling along La. 441, when the accident occurred. Both testified that they saw in their path what they thought was a cow. The vehicle struck the object, throwing plaintiff from her seat. She fractured her sternum and injured her back.
The stretch of La. 441 along which plaintiff and Godso were driving at the time of the accident was in Ward Four of Livingston Parish, an open-range area; an election on January 6, 1968, had decided that in Ward Four livestock would not “be prohibited from roaming at large on the public highways.” The trial court found as fact that no “STOCK AT LARGE” signs were posted on the involved portion of La. 441.
On appeal DOTD has raised four issues:
(1) Do the trial court’s findings of fact and conclusions of law meet the demands of LSA-C.C.P. art. 1917?
(2) Is Livingston Parish rather than DOTD the proper party defendant?
(3) Was DOTD’s failure to post “STOCK AT LARGE” signs the cause in fact of the injury?
(4) Was the trial court’s award of $50,-000.00 an abuse of discretion?
ISSUE NUMBER ONE
The trial judge adopted the findings of fact and conclusions of law suggested by the plaintiff. The trial judge found that DOTD breached its duty to warn of the dangerous possibility of livestock on the highway. The court referred to DOTD as a “tort feasor.” It found that plaintiff was entitled to recover from DOTD. While there was no direct statement that DOTD’s fault was a “proximate cause” of the injury, we find that it is an inescapable inference. LSA-C.C.P. arts. 1917, 1811(B)(1). (The latter article has been amended and is found in 1812(C).)
As to the other elements of LSA-C.C.P. art. 1811(B), the trial court found Godso not negligent. It was unnecessary (“inappropriate”) to pass on the question of the passive passenger’s fault. And the “total amount of damages sustained” was set by the court at $50,000.00.
We find that the trial court was in substantial compliance with the demands of LSA-C.C.P. arts. 1917 and 1811(B). Any failure to enunciate explicitly and label a “proximate cause” finding is harmless error.
ISSUE NUMBER TWO
DOTD argues that posting warning signs on La. 441 was the responsibility of Livingston Parish, not the State through DOTD. But DOTD cites neither statute nor case in support of this proposition. Rather, it suggests that because the Parish had knowledge of the election in which Ward Four rejected prohibiting stock on La. 441, the Parish should be defendant in this case. It is unnecessary to resort to such creativity, for the Legislature and the courts have spoken clearly.
The Legislature has given DOTD authority over and responsibility for highways in the State system. It “shall supervise and regulate all traffic” on those highways. LSA-R.S. 32:2. The portion of La. 441 involved in this case is part of the State highway system. LSA-R.S. 48:191. DOTD’s regulatory duties include providing signs to warn motorists of unexpected dangers. Wall v. American Employers Insurance Company, 215 So.2d 913 (La.App. 1st Cir.1968), writ refused, 253 La. 325, 217 So.2d 415 (1969). In other words, the duty to post warning signs on La. 441 is owed by the State through DOTD.
Separate from the duty imposed on DOTD are those statutes which allow the voters in a ward to prohibit cattle from roaming on such highways as La. 441. On January 6, 1968, Ward Four of Livingston Parish rejected attempts to establish that prohibition.[2] LSA-R.S. 3:3001, et seq. *429 This was possible because La. 441 is not among those highways on which loose livestock are prohibited under any circumstances. LSA-R.S. 3:2803. The action of Ward Four voters does not relieve DOTD of the duty, recognized by legislation and jurisprudence, to properly warn motorists.
ISSUE NUMBER THREE
DOTD asserts that its failure to post “STOCK AT LARGE” signs was not a cause in fact of plaintiffs injury.[3] The trial court found as fact that Godso was not negligent. There was uncontradicted testimony that he was driving with lights on within the speed limit and that he took evasive action when faced with an unexpected emergency. We cannot say that this finding is manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
If the driver did not cause the accident, perhaps the obstruction did. Plaintiff and Godso testified without dispute that they believed the van struck a cow in the highway. The trial court accepted this testimony in its findings of fact. Three factors lead us to believe that the owner of this cow should not here be held liable. First, there is no presumption of owner fault in situations such as this when a cow is struck by a vehicle traveling in an open-stock area. The fault must be proved by competent evidence. Leger v. Delano Plantation, Inc., 352 So.2d 743 (La.App. 3rd Cir.1977), writ denied, 354 So.2d 211 (La.1978); Harrington v. Upchurch, 331 So.2d 506 (La.App. 3rd Cir.1976), writ denied, 337 So.2d 222 (La.1976).[4]
Second, no evidence was presented that this cow was owned by anyone or that any possible owner was at fault in allowing it on the highway. Third, the cases have consistently held that in open-range areas there is no duty imposed on the owner or custodian to confine his cattle. Leger; Culpepper v. Rachal, 370 So.2d 154 (La.App. 3rd Cir.1979); Flores v. Commercial Union Insurance Company, 337 So.2d 264 (La.App. 2nd Cir.1976). We must conclude that the owner, if there was one, had no duty to confine the cow, nor did defendant prove that a purported owner caused the accident.[5]
Plaintiff contends that DOTD’s failure to post warning signs was a cause in fact of her injury. This contention rests on the presumption that had DOTD posted a sign, Godso would have obeyed it and thus avoided the accident. The jurisprudence has approved this presumption in intersec-tional collision cases where traffic signs were damaged or missing. Willis v. Everett, 359 So.2d 1080 (La.App. 3rd Cir.1978); writs denied, 362 So.2d 800 (La.1978). Vallot v. Touchet, 337 So.2d 687 (La.App. 3rd Cir.1976); Funderburk v. Temple, 268 So.2d 689 (La.App. 1st Cir.1972); writ refused, 270 So.2d 875 (La.1973). These cases support the view that a warning sign would have been obeyed and that the absence of such a sign was thus a cause in fact of the accident.
In State Farm Mutual Automobile Insurance Company v. Slaydon, 376 So.2d 97 (La.1979), the Supreme Court held the Louisiana Department of Highways liable for personal injuries caused in a collision between a vehicle and a cow on Interstate 59. The court pointed out that a motorist has the right to presume that highways are safe for ordinary use and that he is not required to anticipate extraordinary dangers which he has not been warned *430 against. The Department of Highways was at fault in causing the accident because of its failure to warn of a possibly hazardous condition, cattle on the roadway. This failure to warn was held to be “a breach of its duty to maintain the highway in a safe condition.” Slaydon, 376 So.2d at 99.[6]
We conclude our discussion of liability by recalling the 1968 election by the Ward Four voters of Livingston Parish. The Police Jury announced and made part of the public record that the voters of Ward Four had decided not to make the portion of La. 441 involved here a closed-range area. This constitutes at least constructive notice to DOTD, and we find that DOTD had at a minimum constructive notice of this being a potentially dangerous open-range area. Slaydon, 376 So.2d at 99.[7]
This last finding completes the elements necessary to DOTD’s liability. DOTD owed a duty to the motoring public to warn of the hazard of cattle on the highways in an open-range area. It had notice of the dangerous condition, but it breached its duty, and this breach was a cause in fact of the complained-of harm. Naylor v. Louisiana Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 427 So.2d 439 (La.1983), 429 So.2d 127 (La.1983), 429 So.2d 134 (La.1983). Holding DOTD liable was not clearly wrong.
ISSUE NUMBER FOUR
DOTD asks that the award of $50,-000.00 for “medical expenses, pain, suffering, personal injury, and resulting disability” be reduced as excessive. We reject this argument because the record reveals no abuse of the trial judge’s much discretion. LSA-C.C. art. 1934(3) (pertinent portion now found in LSA-C.C. art. 2324.1); Reck v. Stevens, 373 So.2d 498 (La.1979).
It is clear that plaintiff suffered from pulmonary and arthritic disorders before the accident, but she testified about the painful nature of her injury and her inability to do household chores, both caused by the accident. This testimony was corroborated by her daughter.
Dr. Charles E;. Lewis treated plaintiff for her injuries. He testified that plaintiff “had a lot of pain in her chest and in her sternum” because of the accident and that she was still complaining of pain when he last saw her in November of 1981. Although he noted that pain is subjective, he described plaintiffs injury as one that “really does hurt a lot.” He recognized that plaintiff was disabled before the accident, but the fractured sternum “might well have increased her disability somewhat.” Her pre-existing medical problems complicated the sternum injury: “a person with her amount of disease, would have an awful lot of discomfort as a result of this.”
Dr. Jed Morris, called by DOTD, had treated plaintiff prior to the accident and saw her after it as well. He indicated that plaintiff “was horribly ill as a result of that accident. She is lucky to have survived it because she was in just excruciating pain.” His view was that plaintiff’s respiratory problems made the fractured sternum even worse, “a bad situation.”
Taking into consideration “the particular effects of these particular injuries upon this particular plaintiff,” we cannot find that the trial court abused its much discretion in the assessment of damages. Reck, 373 So.2d at 500.
*431 For the foregoing reasons, we affirm the judgment of the trial court at appellant DOTD’s cost, amounting to $369.70.
AFFIRMED.

. Her claim against Colonial Penn was settled amicably before trial.

. The voters' rejection of the proposal to make Ward Four a closed-range area may not of itself *429 have made Ward Four an open-stock ward. However, in this case the parties have stipulated that the site of the accident is part of an open-stock area.

. Cause in fact is only one step in the duty-risk analysis. Our discussion will focus on all aspects of the issue of liability.

. In its writ denial in Harrington, the Supreme Court noted, "Under the facts shown, the presence of the cow in open-range highway did not create an unreasonable risk of injury to others; therefore, the owner is shown to be exonerated from fault.” Harrington, 337 So.2d at 222.

. The mysterious and unfortunate cow was never found. We decline to ascribe any fault to her, believing the intent of the Legislature was to make LSA-C.C art. 2323 bovine-exclusive.

. The opinion does not state explicitly that the failure to warn was a cause in fact of the injuries. Nevertheless, it must be inferred that the unanimous Supreme Court made that finding, as it is a necessary element in establishing liability.

. In his conclusions of law, the trial judge cited testimony by Cliff Lockhart, a DOTD investigator, that a "STOCK AT LARGE” sign was posted in the area of the accident but not on a portion of the route traversed by plaintiff. This testimony is used to support the finding that DOTD had constructive or actual knowledge that livestock might be on roads in this area; otherwise it would not have posted the sign. However, the record reveals only that the sign was in place on March 12, 1982, some seven months after the injury.