610 So.2d 258 (1992)
Keith VASCOCU, et al., Plaintiffs-Appellees,
v.
ACME CEMENT PRODUCTS, INC., Defendants-Appellees.
State of Louisiana, Through the Department of Transportation and Development, Defendants-Appellants.
No. 91-1330.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
Rehearing Denied January 21, 1993.
*260 John W. Scott, Alexandria, for plaintiffs-appellees.
Bobby Culpepper, Jonesboro, for defendant-appellantState.
Mark A. Watson, Alexandria, for defendant-appelleeAcme Cement.
Ronald E. Corkern, Jr., Natchitoches, for defendant-appelleePolice Jury.
Edward E. Rundell, Alexandria, for defendant-appelleeLa. Industries.
Lala Sylvester, Natchitoches, for Luhr Bros.
Joy Clemons, Baton Rouge, for State.
Before LABORDE and THIBODEAUX, JJ., and CULPEPPER[*], J. Pro Tem.
THIBODEAUX, Judge.
This is a suit for personal injury. Plaintiff, Keith Vascocu, brought this action against the State of Louisiana through the Department of Transportation and Development (DOTD); Louisiana Industries; Luhr Brothers, Inc. (Luhr); Denton Construction Company (Denton); Acme Cement Products, Inc. (Acme); and, Acme's insurer, United States Fidelity and Guaranty Company (USF & G), for injuries sustained in an automobile accident. His wife, Bridgett Vascocu, sued for loss of consortium. *261 We reverse in part and affirm and amend in part.
A jury trial was held for all defendants except DOTD. At the beginning of trial, plaintiff's claims against Louisiana Industries were dismissed and, before its conclusion, a settlement was reached with Luhr and Denton. Upon completion of the trial, the jury found negligence on the part of DOTD, Denton, Acme, and plaintiff. Percentages of fault were assigned, with DOTD found 30% at fault, Denton 60% at fault, Acme 0% at fault and plaintiff 10% at fault. Damages totalling $378,000.00 were awarded, including $55,000.00 for loss of consortium to plaintiff's wife.
The trial judge found DOTD negligent and 40% at fault. After deciding the jury was incorrect in assessing 10% fault to plaintiff, he added that amount to the original 30% assigned by the jury to DOTD. All other jury findings were unaltered. It is from this judgment the parties appeal. DOTD is original appellant but both plaintiff and Acme answer the appeal and request relief.

FACTS
This suit arises out of a single car accident occurring at 6:50 p.m. on "Water Well Road" near its intersection with Interstate 49 (I-49) in Natchitoches Parish. Plaintiff was travelling the road when his vehicle struck a pile of hardened cement residue in the east bound lane. The impact caused a front tire to blow out and forced the vehicle into a nearby ditch. He alleges injuries as a result of the accident.
The facts pertinent to the present case are those concerning the origin of the cement with which plaintiff collided. At the time of the accident, a project to "patch up" certain portions of I-49 was underway. Approximately ten percent of the cement used in the original construction of I-49 was defective and needed replacing. In order to make the proper repairs, the defective portions were removed and new cement was poured.
DOTD was overseeing construction on this particular patching project. Luhr was the general contractor which entered into a subcontract agreement with Denton, and Denton handled the actual construction. Denton contracted with Acme for delivery of cement.
On March 11, 1988, Acme began delivering cement to the construction site. The project required great quantities of cement, and numerous trips were made per day by Acme trucks and trucks from other cement companies loaned out to Acme to meet the heavy demand. Upon arrival, the driver would dump the cement in his truck where directed by a construction worker. The driver was then required to immediately wash out his truck so the cement would not dry and clog the mixing machinery. Where the washing out actually took place, who determined where to wash out the trucks and who was responsible for cleaning up after the excess was washed out, are questions lying at the heart of this case.
Plaintiff collided with a cement formation with an estimated weight of six thousand pounds. It was irregularly shaped and spread over the east bound lane of Water Well Road. The road changes from pavement to gravel and narrows considerably immediately before the site of the accident, and it is difficult for two vehicles to pass simultaneously in opposite directions.
Plaintiff approached the site of the accident near dusk and as another vehicle was approaching in the opposite lane. The presence of the other vehicle meant plaintiff had to remain in his own lane of traffic rather than straddle the middle of the road as is apparently the custom on that portion of Water Well Road. In doing so, he struck the cement and the accident resulted.

DOTD'S ASSIGNMENTS OF ERROR

A. Fault of DOTD
The first assignment of error raised is the trial court's finding DOTD liable and placing no liability on Acme. Plaintiff also assigns this is error in his answer to the appeal.
*262 The error asserted encompasses both the decision of the jury and the trial judge. The jury determined Acme was negligent but not the legal cause of the injury to plaintiff. DOTD was found by both to be liable for plaintiff's injury. The standard of review of findings of a trier of fact is clear. Where a credibility evaluation of the evidence furnishes a reasonable factual basis for the trial court's findings, the findings may not be disturbed absent manifest error. The trier of fact must be clearly wrong. If the evidence is subject to two reasonable interpretations, the appellate court may not substitute its own conclusions for that of the trier of fact. Gaspard v. DOTD, 596 So.2d 336 (La.App. 3d Cir.1992); Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
The evidence in the record supports a finding of liability on the part of DOTD. By DOTD's own guidelines, it is ultimately responsible for the safe operation of any project it undertakes. Terry Oswald, the chief inspector for DOTD, testified he suspected the Acme drivers were washing out their trucks on Water Well Road. DOTD argues this alone does not give rise to liability as it is the responsibility of Denton to pick wash out sites and clean them up after completion of the job. However, Oswald and Nicholas Verret, DOTD's construction engineer, both testified it is ultimately DOTD's responsibility to insure the safety of the project area, especially if it has knowledge of a possibly hazardous condition.
The trial judge found DOTD had knowledge that Acme's drivers were washing out cement residue on Water Well Road and failed to inspect the site for potential hazards. The evidence supports this conclusion. The evidence also supports the conclusion by the trial judge and the jury that DOTD failed to secure the project area for safe travel to motorists. There is no manifest error in finding liability on the part of DOTD.

B. Liability of Acme
The next question is whether or not Acme is liable for its part in the injuries to plaintiff. The jury found that Acme was negligent but not a legal cause of plaintiff's injuries. The trial judge speculated the jury based its findings on a belief that Acme's drivers were merely doing what they were told in washing the trucks out on Water Well Road and were not responsible for the cement they left behind. The trial judge's speculation is not pertinent to our review. However, even considering its correctness, it still does not constitute a reasonable basis for concluding Acme was not a legal cause of plaintiff's injuries.
There is no vicarious liability for the acts of negligence of Acme's employees imposed upon either Denton or DOTD. Denton and DOTD are liable for their own acts of negligence separate from those of Acme. Acme was negligent for washing out cement on a state highway and allowing approximately six thousand pounds to accumulate without taking steps to notify anyone. None of the drivers for Acme testified they were told to wash out on the road. One driver testified he was told to wash out in the ditch that runs parallel to the road. However, the evidence, particularly the photographs of the accident site, reveal the accumulated cement was quite a distance from the ditch and directly in the road. Acme's owner and manager were both aware of not only the location and size of the cement "residue" but also of the need to clean it up. The evidence is clear and nearly without dispute in showing Acme's drivers were responsible for the presence of the cement on Water Well Road. Nevertheless, Acme escaped liability because the jury found it was not the "legal cause" for the accident.
In determining legal cause, the initial injury is whether Acme's act was a substantial factor in causing plaintiff's injury. There must be a substantial proximate relationship between the action of the defendant and the harm caused plaintiff. Breithaupt v. Sellers, 390 So.2d 870 (La. 1980); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980).
Acme placed an enormous amount of cement on Water Well Road. While it *263 may have been Denton's responsibility to choose the wash out site and it may have been Denton's and DOTD's responsibility to keep the project site clean and hazard-free, violations of these duties do not supersede the negligence of Acme. Acme was negligent in continuously emptying the cement onto the roadway and not notifying either Denton or DOTD after recognizing it needed to be removed. It was Acme's act of placing the cement in the road that directly contributed to the accident and plaintiff's alleged injuries. There is a substantial relationship present between the two. Acme's actions, under the jurisprudence interpreting it, were a legal cause of plaintiff's injury.

C. Fault of Plaintiff
DOTD's next assignment of error, and one also asserted by Acme, concerns the trial court's exculpating Keith Vascocu from fault. The jury originally found plaintiff to be 10% at fault. The trial judge found, according to his reasons for judgment, the evidence clearly showed plaintiff operating his vehicle in a safe and appropriate manner and ruled the jury verdict was contrary to the evidence. He later added plaintiff's fault to that of DOTD.
The trial judge pointed to the testimony of Trooper Townsend to support his finding that plaintiff was not negligent. He concluded the record was absolutely devoid of evidence that would show plaintiff was operating his vehicle in an improper manner. Our review of the record supports the finding of the trial judge. Trooper Townsend testified plaintiff was driving below the speed limit and that it was virtually impossible for him to see the cement before he hit it. There is nothing in the record to warrant imposing fault on the part of plaintiff. This assignment is without merit.

APPORTIONMENT OF FAULT
As a result of our finding Acme at fault, we must adjust the percentages of fault expressed in the judgment. We find the negligence of Acme to be a factor in the injury to plaintiff. We believe the testimony and evidence reveals Acme disregarded concern for the possible effects of its actions. We also find DOTD, in allowing such a condition to exist and in having the ultimate control over the project, should also bear a great deal of the fault. Therefore, we assess Acme with twenty (20%) percent fault, DOTD with forty (40%) percent fault and reduce the fault assessed to Denton to forty (40%) percent. As stated earlier, we find no fault on the part of plaintiff.

D. Loss of Consortium
The next assignment raised by both DOTD and Acme is the trial court erred in making an award of $55,000.00 to plaintiff's wife for loss of consortium. Both parties claim failure to prove damages or, in the event it is found there was sufficient proof, the award was excessive. Under the direction of Reck v. Stevens, 373 So.2d 498 (La.1979), we look first to the record and the individual circumstances of the case to determine if an award was warranted.
The record reveals plaintiff underwent dramatic changes in his life following the accident. There is testimony regarding his inability to care for himself and his family and the effect this inability had on his wife. There is also evidence to show the injuries that rendered him incapable of finding work also prevented him and his family from a stable and happy existence, as he was unable to perform simple tasks required of a husband and father. Plaintiff testified he was required to rely heavily on his wife to care for him and the injury negatively affected their sex life for approximately six months. Furthermore, the fact plaintiff lost his home and only source of income directly implies a reduction of societal status.
We find enough evidence to warrant a consortium award. However, in light of the extent of the evidence, we believe the amount to be excessive. The jurisprudence generally runs against high consortium awards. Awards in the range of that given plaintiff's wife are usually based on situations where the consortium losses experienced are shown to be more complete and permanent. See, Landry v. Melancon, 558 So.2d 1143 (La.App. 1st Cir.1989); Humphries *264 v. La. Dept. of Public Works, 545 So.2d 610 (La.App. 3d Cir.1989), writ denied, 548 So.2d 1249 (La.1989); Morris v. Owens-Illinois, Inc., 582 So.2d 1349 (La. App. 2d Cir.1991), writ denied, 588 So.2d 1119 (La.1991).
There is no evidence of a permanent or continuous consortium loss. We conclude an award of $35,000.00 is suitable compensation for plaintiff's wife and reduce the jury award of $55,000.00 to reflect our findings.
The last issue raised by DOTD concerns the interest on the judgment. The parties solved this problem among themselves subsequent to appeal and it is no longer necessary for us to address it.

ACME'S ASSIGNMENTS OF ERROR
Acme answered the appeal and asserted the trial court was correct in finding them faultless. It made certain assignments of error to be considered by this court in the event we reverse the jury finding and hold Acme liable. Since we have done just that, we shall now consider the following assignments. We need not address the assignments of error dealing with plaintiff's fault and the consortium award as they were raised by DOTD and addressed previously.

A. Issue of "Non-Party" Fault
Acme's first assignment of error concerns the trial judge's refusal to give a jury charge and interrogatory regarding "non-party" fault. Acme requested the inclusion of a charge and a special interrogatory so that the jury could determine whether or not the vehicle approaching in the other lane of Water Well Road was partially at fault for plaintiff's injuries. The trial judge refused both because he felt the evidence did not support such an allegation and to include a charge regarding it would only serve to confuse the jury and distract it from the true issues.
The trial judge has great discretion in conducting the manner and fashion in which the trial is run. The language of La.C.C.P. art. 1812, cited by Acme, states the trial judge "may" submit special interrogatories concerning the fault of another person not a party to the suit "if appropriate." The language could not be clearer in its intent to leave such special questions to the trial judge's discretion. Absent an abuse of his broad discretion in such manners, we cannot disturb his decision. Our review of the record reveals the lack of evidence regarding the fault of a party not involved in the suit. Acme's case was not prejudiced by the absence of a charge regarding non-party fault. The trial judge did not abuse his discretion in refusing to allow the jury charge and the special interrogatory.

B. Plaintiff's Prior Conviction and Alleged Illegal Hunting Activity
Acme also asserts as error the failure of the trial judge to allow questioning of the plaintiff concerning his criminal record and possible illegal hunting activities. Plaintiff had been questioned during his deposition about past criminal convictions. At that time, he did not admit to having pled guilty in 1979 to a charge of attempted simple robbery. This eventually came to the attention of Acme. Acme sought to introduce evidence of his prior conviction at trial. Plaintiff made a motion in limine to have the evidence excluded under La.C.E. art. 609. Article 609 precludes evidence of prior convictions in a civil case where conviction occurred more than ten years prior to trial. The trial judge granted plaintiff's motion.
Acme's attempt to bring up plaintiff's prior convictions during cross-examination of plaintiff was disallowed by the trial judge. Acme argues that the evidence was acceptable because plaintiff was dishonest in his deposition and it had a right to question him as it was relevant to his credibility. The trial judge ruled the probative value of the testimony was outweighed by the prejudicial effect.
Acme insists questioning plaintiff on this prior conviction was crucial because he was the only witness to the accident. They claimed, by not allowing them to put his credibility in question, the trial judge eliminated a strong aspect of their defense.
*265 Again, we recognize the broad discretion on the part of the trial court to make such determinations. The testimony of the plaintiff was not the only evidence which tended to show what happened during the accident. Plaintiff's testimony of the events was not so crucial to Acme's case as to hinge on his credibility, and justify allowing Acme to question him on a prior conviction that would otherwise be excluded. We find no abuse of discretion in sustaining the objection.
Likewise, we find no abuse of discretion in the trial court's refusal to allow questions regarding alleged illegal hunting activity. Acme contends plaintiff lied under oath when questioned about out-of-season deer hunting. The record shows the allegations were unsubstantiated and irrelevant. The trial judge so ruled, and we agree. This assignment is without merit.

PLAINTIFF'S ASSIGNMENTS OF ERROR

A. Plaintiff's Permanent Disability
Plaintiff also asserted error in the findings of the trial court. The assignment regarding plaintiff's own fault was previously addressed, but two others remain. The first is the jury erred in failing to find plaintiff permanently disabled. For this assertion, plaintiff points primarily to the testimony of Dr. Robert Holladay, his orthopedic surgeon. While Dr. Holladay did testify to the serious nature of the injury and the extent of impairment on plaintiff's life, he never stated plaintiff was permanently disabled. Plaintiff must prove his claim. The jury was obviously not convinced his injuries permanently disabled him. Again, in order for the jury determination on this question of fact to be disturbed, we must find manifest error. We find the evidence supports the jury's determination and this assignment is without merit.

B. Negligence Per Se Jury Instruction
The last assignment of error is the trial court erred in excluding a jury charge on negligence per se. Plaintiff contends the trial judge should have charged the jury regarding specific violations of statutes.
Louisiana jurisprudence has repudiated the doctrine of negligence per se. Phillips v. K-Mart Corp., 588 So.2d 142 (La.App. 3d Cir.1991); Boyer v. Johnson, 360 So.2d 1164 (La.1978). Violation of a criminal statute does not automatically create civil liability. Armour v. Armour, 541 So.2d 371 (La.App. 2d Cir.1989), writ denied, 546 So.2d 1217 (La.1989). The trial judge instructed the jury on the foregoing legal principles, and fairly and properly instructed them on the appropriate statutes. The jury instructions were complete and in no way prejudiced plaintiff's case. This assignment is without merit.

CONCLUSION
For the foregoing reasons, we reverse the trial court's finding Acme not liable for the injuries to plaintiff. We render judgment finding Acme Cement Products, Inc. twenty (20%) percent at fault, the State of Louisiana through the Department of Transportation and Development forty (40%) percent at fault, and Denton Construction Company forty (40%) percent at fault. Lastly, we reduce the award to plaintiff's wife for loss of consortium from $55,000.00 to $35,000.00.
All other aspects of the judgment are affirmed. Costs of this appeal are to be divided between Acme and DOTD.
REVERSED IN PART AND RENDERED; AFFIRMED IN PART AND RENDERED.
NOTES
[*] Honorable William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.